## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MYRON LEVIN,

                Plaintiff,

      v.

NATIONAL HIGHWAY TRAFFIC SAFETY
ADMINISTRATION,

              Defendant.

Case No. 20-cv-3236 (JMC)

## MEMORANDUM OPINION AND ORDER

Plaintiff Myron Levin, a journalist, sues the National Highway Traffic Safety Administration (NHTSA) under the Freedom of Information Act (FOIA), seeking information about the agency's proposed guidelines governing distracted driving. NHTSA produced over 3,000 pages of documents, but many of the pages were heavily redacted. Other documents were completely withheld. NHTSA cites FOIA's Exemption 5 in justifying its withholdings, which protects agency documents under the deliberative process privilege, the attorney client privilege, and attorney work product doctrine. 5 U.S.C. § 552(b)(5). The Parties have filed cross motions for summary judgment on the agency's withholdings.

The Court **GRANTS** each Party's motion in part and **DENIES** each motion in part. In the FOIA Improvement Act of 2016, Congress implemented a new requirement that heightened the showing that government agencies must make to justify withholdings under FOIA exemptions. Under the Act, government agencies may not withhold even privileged materials under Exemption 5 unless they also show that disclosure of the documents would cause "reasonably foresee[able]" harm to an interest protected by the exemption. 5 U.S.C. § 552(a)(8)(A); FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538, 539. NHTSA has failed to

1

demonstrate foreseeable harm from the disclosure of any documents that it seeks to withhold under the deliberative process privilege. Accordingly, Plaintiff's motion for summary judgment is **GRANTED** as to Categories 1–5 of the deliberative process withholdings. Further, the Court finds that NHTSA has only justified some of its withholdings under attorney client privilege. For the documents properly withheld under attorney client privilege, the agency has met its burden to reasonably segregate factual information. NHTSA's motion for summary judgment is thus **GRANTED** as to some of its attorney client privilege withholdings.[1] The Court also **GRANTS** NHTSA's motion on two documents that it has already fully produced and as to Category 6 of its deliberative process withholdings, which Plaintiff does not contest.[2] The Court then **DENIES** both Parties' motions for summary judgment as to the remainder of NHTSA's attorney client privilege withholdings to allow the agency to clarify the connection between the documents withheld and the provision of legal advice.[3] Finally, the agency has also failed to demonstrate that any of its withholdings are attorney work product, so the Court **GRANTS** Plaintiff's motion on that issue as well.[4]

## I.     BACKGROUND

### A.  Factual Background

NHTSA is a component within the Department of Transportation that is charged with a statutory mission to "prescribe motor vehicle safety standards" and "carry out needed safety

---

[1] The documents properly withheld are listed in footnotes 8–9.

[2] Those documents are NHTSA-ES19-004222-000186 and 1026.

[3] The documents the agency needs to provide further explanation on are listed in footnotes 10–13.

[4] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

research and development." 49 U.S.C. § 30101. In April 2013, NHTSA released a set of guidelines, known as the Phase 1 Guidelines, aimed at promoting safety by "discouraging the introduction of excessively distracting devices in vehicles." Visual-Manual NHTSA Driver Distraction Guidelines for In-Vehicle Electronic Devices, 79 Fed. Reg. 55530, 55530 (Sept. 16, 2014). The nonbinding, voluntary Guidelines provided recommendations for how "in-vehicle devices [should] be designed so that they cannot be used by the driver to perform [certain] inherently distracting secondary tasks while driving." *Id.* at 55531. The Guidelines also specified "a test method for measuring eye glance behavior" to assess "whether a task interferes too much with driver attention, rendering it unsuitable for a driver to perform while driving." *Id.*

This case centers around NHTSA's stalled development of a follow-up set of guidelines, known as the Phase 2 Guidelines. In December 2016, NHTSA published proposed guidelines that aimed to create "a safety framework for developers of portable and aftermarket electronic devices" used in cars. Visual-Manual NHTSA Driver Distraction Guidelines for Portable and Aftermarket Devices, 81 Fed. Reg. 87656, 87656 (Dec. 5, 2016). While the Phase 1 Guidelines covered the "visual-manual interfaces" of electronic devices that were installed in cars as "original equipment"—i.e., screens that came built into the car—the proposed Phase 2 Guidelines would apply to "portable and aftermarket devices." *Id.* at 87658. Portable devices include smartphones and tablets, while aftermarket devices refer to items installed in the vehicle "after manufacture," such as stereos and GPS systems. *Id.* at 87658, 87661. The agency estimated that, at any given time, over half a million drivers are "using hand-held cell phones while driving" and that sending or receiving text messages takes a driver's eyes off the road for "23 seconds on average." *Id.* at 87657–58. And according to NHTSA, in 2015, 10 percent of traffic fatalities involved one or more

distracted drivers and distraction-affected crashes resulted in injuries to 424,000 people. *Id.* at 87657.

To address these issues, NHTSA proposed two "concurrent approaches" in its Phase 2 Guidelines. First, the agency recommended that portable and in-vehicle systems be designed to "easily pair[] to each other," allowing drivers to use in-vehicle systems that complied with the criteria set by the Phase 1 Guidelines. *Id.* at 87658. The agency also noted that pairing would "ensure that certain activities that . . . inherently interfere" with driving "would be locked out," such as displaying "video not related to driving" or displaying "automatically scrolling text." *Id.* at 87658–59. Second, the proposed guidelines recommended that any portable devices that did not meet NHTSA's existing driver-distraction criteria should "include a Driver Mode" to be "developed by industry stakeholders." *Id.* at 87659. NHTSA sought public comment on these proposed guidelines and the comment period closed on February 3, 2017. ECF 20-3 ¶ 13. NHTSA received 1,797 comments on the proposal, but never published a final version of the Phase 2 Guidelines. *Id.* According to NHTSA, it is still "considering . . . comments and further evaluating" issues addressed by the guidelines, including "driver distraction, automated driving systems, phone applications, data-collection activities, and cost estimates." *Id.*

### B. Procedural History

Plaintiff Myron Levin is an investigative journalist who reports on public health issues, including those related to distracted driving and the use of smartphones. ECF 23-2 ¶¶ 1, 4. He filed a FOIA request in December 2019 seeking "records [he] thought would shed light on what happened with the Phase 2 Guidelines." *Id.* ¶ 10. Specifically, he sought "all records pertaining to the Phase 2 Guidelines that were created or received from February 3, 2017" to December 2019. ECF 1 ¶ 10; ECF 23-1 at 10. And he requested all records including "copies of all emails, letters,

memos, reports, phone slips, power points, meeting agendas, sign-in sheets, and all other writings in NHTSA and Department of Transportation files that mention, discuss, reference, or comment on the Phase 2 Guidelines and possible next steps." *Id.*

After some conversations between Plaintiff and NHTSA, which did not result in the production of any records, Plaintiff filed this suit. ECF 1 ¶¶ 11–13. After the suit was filed, NHTSA disclosed 3,852 pages of records. ECF 23-2 ¶ 19. According to Plaintiff, the pages in this production were "largely blank." *Id.* In its briefing, NHTSA stated that it withheld "the vast majority of the potentially responsive records" under FOIA Exemption 5 because "the subject matter of Plaintiff's request remained in an internal and pending status for the entirety of the time period requested by Plaintiff." ECF 20-1 at 10. After back-and-forth between the Parties, NHTSA produced two *Vaughn* indices to Plaintiff, which explained its withholdings. ECF 20-5 ¶ 30.

Based on these productions, NHTSA filed a motion for summary judgment. ECF 20. Plaintiff then filed his cross-motion for summary judgment. ECF 23. After Plaintiff filed his cross-motion, NHTSA filed a supplemental *Vaughn* index and declaration along with its opposition, presumably to correct deficiencies that Plaintiff identified. The agency's supplemental index and declaration provided further information on "a representative sample of [its] deliberative process claims" and "every attorney client privilege and attorney work product withholding or redaction."[5] ECF 26 at 6–7; ECF 26-2; ECF 26-3. Plaintiff then filed a reply brief and a notice of supplemental authority informing the Court of the D.C. Circuit's decision in *Leopold v. U.S. Department of Justice*, 94 F.4th 33 (D.C. Cir. 2024). ECF 29; ECF 31.

---

[5] Plaintiff is not contesting NHTSA's withholdings under Exemptions 4 or 6. ECF 20-1 at 10 n.1. As a result, only Exemption 5 withholdings under the deliberative process privilege, attorney client privilege, and attorney-work product doctrine remain at issue in this case. *Id.* at 11–12.

## II.     LEGAL STANDARD

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court will grant a motion for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA cases, it is the defending agency's burden to prove it has complied with its obligations under the statute. *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). To satisfy that burden, the "agency must prove that each document that falls within the class requested either has been produced, is unidentifiable[,] or is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980).

## III.     ANALYSIS

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption "incorporates the privileges that the Government may claim when litigating against a private party, including the governmental attorney-client and attorney work product privileges, . . . and the deliberative process privilege." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015). To withhold a responsive record, an agency must show both that the record falls within a FOIA exemption, 5 U.S.C. § 552(b), and that the agency "reasonably foresees that disclosure would harm an interest protected by [the] exemption," *id.* § 552(a)(8)(A)(i)(I).

NHTSA has withheld documents under the deliberative process privilege but failed to articulate any specific foreseeable harm from release of the documents. The agency grouped its deliberative process withholdings into six broad categories and "submitted a series of boilerplate

and generic assertions that release of any deliberative material would necessarily chill internal discussions." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021). Because NHTSA "broadly failed" to demonstrate foreseeable harm for any contested deliberative process withholdings, the Court will deny NHTSA's motion for summary judgment and grant Plaintiff's motion as to those documents. *Id.* Next, the agency has properly asserted attorney client privilege over a number of documents, but also failed in many cases to articulate the connection between the documents withheld and the provision of legal advice. *See Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997). For those documents properly withheld under the attorney client privilege, NHTSA has demonstrated that it has released all reasonably segregable factual information. NHTSA's motion for summary judgment is thus granted as to some of its attorney client privilege withholdings. As to the remainder, the Court denies both Parties' motions for summary judgment and will provide the agency an opportunity to articulate the connection between the withholdings and the provision of legal advice. Finally, because NHTSA has not articulated any reason why litigation was foreseeable at the time of the creation of these documents, the Court rejects the agency's assertions that it can withhold some documents under the attorney work product doctrine and thus grants Plaintiff's motion on that issue. *See Nat'l Ass'n of Crim. Def. Laws. v. U.S. Dep't of Just. Exec. Off. for U.S. Att'ys (NACDL)*, 844 F.3d 246, 250 (D.C. Cir. 2016).

### A.  Deliberative Process Privilege

The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which government decisions and policies are formulated." *Reps. Comm.*, 3 F.4th at 361. To invoke the privilege, NHTSA must show that the documents are both "predecisional and deliberative." *Id.* at 362. "A

document is predecisional if it was generated before the agency's final decision on the matter," and it is "deliberative" if it was "prepared to help the agency formulate its position" and "reflects the give-and-take of the consultative process." *Id.*

In 2016, Congress passed the FOIA Improvement Act to address "concerns that some agencies are overusing FOIA exemptions that allow, but do not require, information to be withheld from disclosure." S. Rep. No. 114-4, at 2 (2015). To remedy such overuse, Congress introduced a foreseeable harm requirement that allows agencies to withhold information only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I). The D.C. Circuit has emphasized that "whether a requested record falls within an exemption and whether the disclosure of that record would foreseeably harm an interest protected by the exemption are distinct, consecutive inquiries."[6] *Leopold*, 94 F.4th at 37. An agency "must specifically and thoughtfully consider foreseeable harm from disclosure of *otherwise-exempt* information, including whether partial disclosure of information is possible." *Id.* at 38. "Agencies cannot rely on mere speculative or abstract fears, or fear of embarrassment" to justify withholdings. *Reps. Comm.*, 3 F.4th at 369.

In this case, NHTSA has sought to withhold or redact thousands of pages of documents, relying on the deliberative process privilege for every document that remains in dispute. ECF 20-7; ECF 20-8; ECF 26-3. The Court does not need to decide whether each document is in fact

---

[6] *Leopold* was decided after the briefing in this case was completed, but the Court is bound to apply it and other recent precedents in deciding the current dispute. *See, e.g.*, *Rudometkin v. United States*, 140 F.4th 480 (D.C. Cir. 2025). Although the Court acknowledges that the foreseeable harm doctrine has been further explained by the D.C. Circuit since the briefing in this case was completed, NHTSA had ample opportunity to try to meet the legal standard set by the D.C. Circuit in *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021), which was decided before NHTSA filed its initial motion for summary judgment and its supplemental *Vaughn* index and declaration. ECF 20; ECF 26. Courts in this district had also clearly articulated the foreseeable harm standard prior to NHTSA's filing of its motion. *See, e.g.*, *Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020); *Cause of Action Inst. v. Export-Import Bank of the U.S.*, 521 F. Supp. 3d 64, 80 (D.D.C. 2021).

exempt from disclosure under the deliberative process privilege because NHTSA has failed to put forth any theory of foreseeable harm from release of these documents.[7] In other words, even if the Court assumed that every document was exempt, those documents can nonetheless be publicly released because there is no articulated foreseeable harm from doing so. *Leopold*, 94 F.4th at 37 (requiring agencies to satisfy two "distinct, consecutive inquiries"). Instead of explaining the concrete harm that would stem from disclosure, NHTSA has relied on exactly the type of generalized assertions rejected by the D.C. Circuit.

First, the agency grouped the withheld responsive documents into six categories, covering communications related to the Phase 2 Guidelines regarding (1) "outside inquiries or public statements," (2) "briefings," (3) "comments received on the proposed Phase 2 Guidelines," (4) "various draft agency documents," (5) "[m]aterials emblematic of the routine, ongoing communications among agency personnel," and (6) "[i]nternal communications . . . that contained the internal system locations where deliberative materials were stored or dedicated email server addresses to which such materials were submitted." ECF 20-1 at 18–21. Plaintiff has not disputed the agency's withholding of Category 6, so the Court treats as conceded NHTSA's arguments that

---

[7] The Court notes, however, that it is unlikely that all of the documents that NHTSA seeks to withhold are both deliberative and predecisional. *Cf. Cause of Action Inst.*, 521 F. Supp. 3d at 81. A number appear to be the culmination of subsidiary decisionmaking processes that have concluded and hence are not predecisional. Within the overall development of the Phase 2 Guidelines are dozens of smaller decisions, including the agency's potential decisions to work with contractors, respond to outside inquiries, publish reports, complete certain types of testing, and more. NHTSA argues that it does not need to disclose the outcome of any subsidiary processes because it has not reached any "interim conclusions" about the Phase 2 Guidelines. ECF 26 at 10 (citing ECF 26-2 ¶ 7). The agency's analysis misunderstands the case law. The agency is not required to disclose its interim conclusions on the substance of the Phase 2 Guidelines but is required to release any final decisions within the longer process of formulating those Guidelines. *See Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 376 F. Supp. 3d 47, 67 (D.D.C. 2019) (rejecting a view of the deliberative process that would allow agencies to "shield from review thousands of agency records because a years-long rule-making was underway"); *Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 243–44 (D.D.C. 2017) (requiring the agency to identify the "function or significance of the particular record" as part of a "definable decision-making process"). If NHTSA made certain final decisions—to terminate a contractor, for example, or publish a presentation—the agency must release the final product of that subsidiary decision, rather than cloaking it within the unfinished rulemaking process. Based on their updated *Vaughn* index, NHTSA has established that some documents are predecisional and deliberative, but others may not be. The Court does not have enough information about the latter category of documents to say whether the exemption was properly invoked.

this category of communications is properly withheld and grants summary judgment to the agency as to those documents. ECF 26 at 8.

For the remaining five categories, the Court recognizes that an agency is permitted to group documents and address foreseeable harm "on a category-by-category basis rather than a document-by-document basis." *Reps. Comm.*, 3 F.4th at 369. The agency must, however, "independently demonstrate[]" "the basis and likelihood of th[e] harm" for each category of documents. *Id.* NHTSA's error lies not in grouping the documents but in doing so at such a high level of generality that it could then provide only boilerplate discussions of foreseeable harm. A brief scan of NHTSA's descriptions demonstrates that the agency has submitted "cookie-cutter formulations" of harm divorced from "the specific type of material at issue here." *Id.* at 371. For example, the agency describes Category #4 records as "internal communications between agency personnel pertaining to various draft agency documents relating to the proposed Phase 2 Guidelines." ECF 26 at 26. In a declaration in support of withholdings in this category, NHTSA's counsel states that release of these records would cause harm because "[a]gency employees need the freedom and flexibility to write, rewrite, and seek input on documents in order to refine those materials into versions suitable for providing recommendations to leadership or accurately and effectively conveying information to the public." ECF 20-5 ¶ 40. NHTSA's description of Category #5 and its corresponding harm are similarly vague. Category #5 comprises of other "documents and communications" that "reflect the internal exchange of information, ideas, and recommendations that occurred during the course of NHTSA personnel's work on the day-to-day projects that arose as the agency continued to develop the Phase 2 Guidelines." *Id.* ¶ 41. In describing the harm that would occur if such documents were released, agency counsel states:

> [S]uch day-to-day records often discuss issues in a more informal, abbreviated, or expedient format, such as when several colleagues quickly check in on a project or pass

along an update. If subject to disclosure, these types of critical daily collaborations risk becoming chilled altogether, but to the extent they continued, they would become much more formalized in a manner that would dramatically undermine the efficiency and effectiveness of the communications. Since these types of communications comprise so much of the daily work of the agency, and permeate through practically all agency activities, such an effect would severely undermine NHTSA's safety mission.

*Id.* ¶ 43.

NHTSA's descriptions of "harm" parrot the rationales behind the deliberative process privilege and generically assert that communication or collaboration could be chilled from the public disclosure of documents—a claim that could be made for almost any document in any context. These descriptions fall far short of the heightened showing of harm required by the D.C. Circuit after the passage of the FOIA Improvement Act of 2016. *Reps. Comm.*, 3 F.4th at 372 (foreclosing agencies from relying on "perfunctory, sweeping, and undifferentiated declaration[s] that release of every single record withheld would have an inhibiting effect by chilling full and frank discussions"). The D.C. Circuit requires a level of specificity in articulating foreseeable harm that is entirely absent from NHTSA's declarations and *Vaughn* indices. In *Reporters Committee for Freedom of the Press v. FBI*, for example, the D.C. Circuit agreed with the agency that release of emails concerning FBI Director James Comey and other high-ranking officials implicated the "unique sensitivity of discussions" about "how to respond to an ongoing crisis that threatened existing covert Bureau operational tactics." *Id.* at 372. The FBI did not simply claim that release of the records would generally inhibit internal discussions, but identified unique features of the information at issue and the specific agency functions that would be compromised. More recently, in *Rudometkin v. United States*, a plaintiff sought records related to the "nomination, selection, and appointment of . . . the Chief Trial Judge of the Military Commissions Trial Judiciary." 140 F.4th 480, 488 (D.C. Cir. 2025). The Circuit held that records relating to deliberations on "a particularly sensitive personnel decision" were properly withheld because disclosure of those

documents "would reveal internal discussions about the candidates" and "why the candidates were or were not selected." *Id.* at 493. The Circuit permitted the government to justify its withholdings on "a category-by-category basis" because the declarations in that case "sufficiently indicate[d] the substance of the information contained and allow[ed] the court to assess the [g]overnment's representations of how release of the documents would result in harm." *Id.* at 493.

Other courts in this district have also upheld agency descriptions of foreseeable harm only when those descriptions are tied to specific contexts. In *Greenspan v. Board of Governors of Federal Reserve System*, another court in this district held that the Board met its foreseeable harm burden for withholding "emails and attachments preparing for upcoming [Federal Open Market Committee] meetings" because such documents, if disclosed, "could be misinterpreted, misconstrued, or prematurely acted upon by financial markets, market participants, government officials, or consumers." 643 F. Supp. 3d 176, 199 (D.D.C. 2022). Similarly, in *Cause of Action Institute v. Export-Import Bank of the United States*, a court allowed the Export-Import Bank to withhold disclosure of reports that addressed risks in "the Bank's vulnerable transactions." 521 F. Supp. 3d 64, 78 (D.D.C. 2021). The court found that disclosure of such internal analyses would impinge upon the Bank's "ability to manage complex, evolving transactions" by inhibiting agency staff's ability to discuss their view of the facts and "their ideas on plans to address the recovery of . . . money" for the Bank. *Id.* at 80. Disclosure could also permit other parties to "find out the thinking underlying" the Bank's positions and use such information to "undermine [the Bank's] negotiating position." *Id.*

In short, when assessing agency withholdings under the deliberative process privilege, the Court must ask: Is this assertion of foreseeable harm specific to *this* type of document and the role it plays in *this* deliberative process? *NPR v. U.S. Dep't of Homeland Sec.*, No. 20-cv-2468,

2022 WL 4534730, at *8 (D.D.C. Sept. 28, 2022) (noting that courts must "give meaning to the requirement . . . that the agency articulate why *this* disclosure would *be particularly* harmful"). In the above cited cases, courts have identified rationales for withholding documents that are specific to Export-Import Bank loans, preparation for Federal Open Market Committee meetings, or future covert operations by the FBI. Each case involved declarations that made specific arguments about foreseeable harm that could not simply be ported over to another context. But NHTSA's assertions describe general and hypothetical harms, such as "chilled" internal collaborations, that could apply to the release of almost any government document covered under the deliberative process privilege. ECF 20-5 ¶ 43. While NHTSA states that inhibiting such communications would "undermine NHTSA's safety mission," the agency offers no explanation that actually draws a line from the disclosure of any document (or categories of documents) to its safety goals. *Id.*

NHTSA raises several arguments against releasing these documents, but none persuasively covers the gap in its foreseeable harm justifications. First, NHTSA argues that any disclosure of these documents risks public confusion over the agency's official position on the Phase 2 Guidelines. The agency claims that any documents disclosed could be "mistaken for agency-wide views" because NHTSA has not published a final version of the Guidelines, and staff-level impressions "would be the most recent public statements on many of these issues." ECF 20-3 ¶ 21. But such assertions are far from specific allegations of foreseeable harm—this general risk of public misattribution could apply to any document prepared during the pendency of the Phase 2 Guidelines process. And even where the agency comes closer to articulating harm, it still falls short. For example, NHTSA explained that releasing "the agency's interim impressions and reactions to comments" could "undermine the agency's rulemaking processes and lead to public confusion about how the agency views particular topics on which the public has provided input."

ECF 20-5 ¶ 39. While the Court does not doubt that releasing some agency impressions of comments could reveal agency views on certain topics, NHTSA's general assertion that release of documents would "undermine" rulemaking again restates a truism about rulemaking processes generally.

Accordingly, the Court will order NHTSA to re-process its withholdings and release all Categories 1–5 documents withheld under the deliberative process privilege that are not properly withheld on another basis. *Am. Oversight v. Dep't of Homeland Sec.*, 691 F. Supp. 3d 109, 117 (D.D.C. 2023) (requiring agency to "release all documents" withheld under Exemption 5 because it failed to "tether[]" its foreseeable harm concerns "to these particular documents"). While the Court recognizes that agencies are sometimes afforded a "second chance" to explain their withholdings, it lacks confidence that further proceedings would aid NHTSA's case here. *Ams. for Fair Treatment v. USPS*, 663 F. Supp. 3d 39, 62 (D.D.C. 2023) (stating that the court "would be within its discretion" to simply "order the agency to re-process its disclosures without any Exemption 5 withholdings" but offering the agency another opportunity to justify its withholdings). NHTSA has already had two bites at the apple: its initial motion for summary judgment briefing (which included *Vaughn* indices and declarations) and its opposition to Plaintiff's cross-motion (which included a supplemental *Vaughn* index and declaration). ECF 20; ECF 26. In filing its supplemental *Vaughn* index, the agency noted that it was attempting to "adequately and accurately substantiate[] its Exemption 5 claims." ECF 26 at 7. At that point, Plaintiff had already filed his cross-motion pointing out the flaws in NHTSA's foreseeable harm analysis, but the agency did not remedy any of those defects. ECF 23-1 at 30–32. Across its two attempts, the agency's foreseeable harm arguments amount to no more than a reformulation of the general harms protected against by the deliberative process privilege, without any specificity.

Because the agency failed to articulate how "disclosure of *any* of [its] withholdings would cause reasonably foreseeable harm to an interest that Exemption 5 protects," the Court grants summary judgment to Plaintiff on NHTSA's deliberative process withholdings. *NPR*, 2022 WL 4534730, at *10.

### B. Attorney Client Privilege

Turning to attorney client privilege, the Court finds the agency's withholdings to be partially justified. The Court will grant NHTSA's motion for summary judgment as to the properly withheld documents and give the agency an opportunity to explain why the remaining documents are covered by the attorney client privilege in light of the Court's ruling.

To begin, the privilege "protects confidential communications from client to attorney, and from attorney to client." *Pub. Emps. for Env't Resp. v. EPA*, 211 F. Supp. 3d 227, 230 (D.D.C. 2016). In the context of an agency like NHTSA, "the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts*, 117 F.3d at 618. But the privilege only covers those communications "made for the purpose of securing legal advice or services" and those that "rest on confidential information obtained from the client." *Id.* As such, "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984). It is NHTSA's burden "to present to the court sufficient facts to establish . . . with reasonable certainty that the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure." *Id.* And NHTSA must "demonstrate" that the documents were under "confidentiality . . . at the time of the communication" and that confidentiality has been "maintained since." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

First, the Court finds that NHTSA has sufficiently established attorney client privilege for

a number of documents addressed in its supplemental *Vaughn* index.[8] *See* ECF 26-3. And Plaintiff

---

[8] Those document—listed according to their Bates number as provided on the supplemental *Vaughn* index—are as follows: 112 to 119 ("[d]raft NHTSA paper containing annotations, feedback, and comments from NHTSA Chief Counsel's Office"); 143 (attorney email requesting "information pertaining to timing and cost estimates for work remaining on the Guidelines"); 157 to 160 (memo describing draft test procedures and including input from Office of Chief Counsel); 297 to 301 (email chain "seeking advice from the attorney regarding the application of procedural requirements to test procedures pertaining to the Guidelines"); 302, 303 to 358 ("attorney is providing feedback on his review of test procedures pertaining to the Guidelines"); 385 to 386 (email chain discussing preparation of response for congressional request regarding driver distraction issues, including draft language from the attorney on the requested response and internal staff discussions about how to prepare the requested work); 395 to 396 (email chain "summarizing legal advice" on responding to a media inquiry); 670 to 671 ("The email consists of the attorney's request for information pertaining to timing and cost estimates for work remaining on the Guidelines."); 906 to 907 ("a draft outline analyzing legal and statutory issues pertaining to the Phase 2 Guidelines"); 1062 to 1080 (email from research engineer to counsel "seeking advice from [counsel] regarding the application of procedural requirements to test procedures pertaining to the Guidelines" and other emails containing "legal advice relating to the applicability of procedural requirements"); 1177 to 1178 (information received by attorney regarding status of guidelines); 1222 (email from attorney "advising of impending preparation needed for an upcoming congressional hearing in which questions about the Phase 2 Guidelines may arise" and containing advice on "how to structure and approach responsive preparation documents"); 1378 to 1379 (email from agency client to counsel providing "information regarding agency driver distraction activities to enable [counsel] to provide advice in the event that work in this space . . . raises issues, including legal issues"); 1380 to 1385 (email chain for purpose of "obtaining advice and feedback from counsel" on "a draft regarding potential cost estimates of Phase 2 Guidelines"); 1330 to 1331 (providing lawyer "an update on a draft document about driver distraction and seeking his review and input on that draft"); 1371 (a chart "keep[ing] track of input received from NHTSA's Office of the Chief Counsel following the counsel's office's review of test procedure documents for the Guidelines"); 1450 to 1451 (emails "for the purpose of discussing comments on the proposed Phase 2 Guidelines and next steps," including reflections of counsel's input); 1625 to 1665 (email chain about "the status of draft documents pertaining to driver distraction, including questions seeking advice from counsel, comments/feedback and legal advice from counsel"); 1852 to 1855 (email chain "regarding preparation and identification of guidance materials relating to research and NHTSA activities in response to external inquiry"); 1856 to 1859 (same); 1861 to 1862 (same); 1888 ("attorney analysis" for the purpose of responding to a "congressional inquiry on NHTSA interim guidance"); 1930 (email "for the purpose of analyzing legal issues for consideration pertaining to the Phase 2 Guidelines"); 1986 (email "requesting information for the purpose of becoming apprised about and being able to provide advice on driver distraction issues"); 1987 (email including discussions of Phase 2 Guidelines and "impressions about comments made thereon, including impressions and items for legal consideration"); 2103 (counsel's "impressions about documentation relating to driver distraction issues that was sent" for review); 2104 to 2105 (email attaching document which contained "input/feedback in redline" from counsel); 2106 to 2129 (the attached document); 2135 (email providing "location of documents for the purpose of keeping counsel apprised and informed of work items, as well as to facilitate necessary review and input on documents"); 2142 (counsel "requesting information relating to Phase 2 Guideline cost estimates"); 2198 to 2200 (email to counsel "for the purpose of requesting review and comment from attorneys . . . on a draft document pertaining to driver distraction guidelines test procedures"); 2216 (response to a request from counsel for "information regarding agency driver distraction activities"); 2833 (email chain "for the purpose of obtaining advice and feedback from counsel on a document, which is a draft regarding potential cost estimates of Phase 2 Guidelines"); 2834 (cost estimate document prepared following discussions with counsel); 2837 (same); 2835 to 2836 (email chain between counsel and agency staff regarding cost estimates); 2854 to 2855 (email chain requesting attorney input on "draft document related to driver distraction" and reflecting that feedback); 3199 to 3200 (email chain discussing briefing of agency leadership, draft documents, and conversations "internal to NHTSA's Chief Counsel's office about those documents"); 3492 to 3493 (attorney email "requesting information for the purpose of becoming apprised about driver distraction issues"); 3496 to 3498 (email chain discussing "cybersecurity issues as they may pertain to the proposed Phase 2 Guidelines," including "items for

also does not contest the assertion of the privilege for a few documents.[9] The Court thus grants summary judgment to NHTSA as to the withholding or redaction of those documents. According to the descriptions provided by the agency in the supplemental *Vaughn* index, ECF 26-3, these documents "contain the product of confidential legal discussion amongst government counsel and agency clients." *Ams. for Fair Treatment v. USPS*, 663 F. Supp. 3d 39, 57–58 (D.D.C. 2023). And the agency's supplemental *Vaughn* index "explain[s] enough about the chain of command and the parties' positions for the Court to determine that" the privilege applies. *Id.* at 58. In these interactions, agency staff are communicating with agency attorneys "as would any private party seeking advice," and, accordingly, the agency "needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors." *Coastal States*, 617 F.2d at 863. For example, some documents are emails or drafts containing comments and feedback from counsel on the agency's design of test procedures for assessing driver distraction. *See, e.g.*, ECF 26-3 at 5 (noting that in records 302 and 303 to 358 an attorney is "providing feedback on his review of test procedures pertaining to the Guidelines"); *id.* at 9 (emails in 1062 to 1080 are from research engineer to counsel "seeking advice from [counsel] regarding the application of procedural requirements to test procedures pertaining to the Guidelines"). Other documents include counsel's analysis of legal issues relevant to the Phase 2 Guidelines. *See, e.g.*, *id.* at 7 (records 906 to 907 include "a draft outline analyzing legal and statutory issues pertaining

_____

legal consideration"); 3666 (attorney email "providing comments and impressions on a draft document regarding test procedures"); 3757 (email "seeking . . . legal advice" on "a driver distraction issue").

[9] Plaintiff does not contest NHTSA's assertions of privilege over documents 1265, 1269, 1274, 2197, 3512, and 3572. *See* ECF 23-1 at 26 n.6. The Court accordingly grants summary judgment on those and related documents: 1262 to 1273 (email "request[ing] input on potential response to an outside inquiry on driver distraction issues"); 1265 (same); 1269 (same); 1274 (same); 2193 to 2196 (attorney email requesting "input on potential response to an outside inquiry that implicates certain AV policy and legislative issues"); 2197 (same); 3512 (document apprising agency staff of "the Office of Chief Counsel's comments on a report in anticipation of briefing agency leadership"); 3572 (email apprising division leadership of "the Office of Chief Counsel's comments on a report").

to the Phase 2 Guidelines"); *id.* at 23 (record 1930 is an email sent "for the purpose of analyzing legal issues for consideration pertaining to the Phase 2 Guidelines"). Plaintiff has also recognized that agency counsel's legal advice in responding to outside inquiries can be properly withheld under the privilege. *See supra* 17 n.9.

NHTSA has also shown that it has protected the confidentiality of such documents. "The burden is on the agency to demonstrate that confidentiality was expected in the handling of these communications, and that it was reasonably careful to keep this confidential information protected from general disclosure." *Coastal States*, 617 F.2d at 863. NHTSA has stated that these communications "were intended to be kept confidential, and that confidentiality has been maintained." ECF 20-5 ¶ 49. These statements, "along with the presumption of good faith that the Court affords agency declarations," suffices to "establish[] confidentiality." *Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 117 (D.D.C. 2021); *see Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 735 (D.C. Cir. 2017) (courts can grant summary judgment based on agency declarations "if they are not called into question by . . . evidence of agency bad faith"). The Court finds that agency staff requesting legal advice "intended" that their discussions with counsel about test procedures, cost estimates, and other issues related to the Phase 2 Guidelines would be "kept confidential." ECF 20-5 ¶ 49. As a result, the Court finds that the agency has demonstrated that these documents "were circulated no further than among those members of the organization who are authorized to speak or act" on the subject matter in question. *Coastal States*, 617 F.2d at 863; *Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 256 (D.D.C. 2017) (accepting the Army's assertion of attorney client privilege where plaintiff did not "identif[y] any indicia on the redacted documents that they were distributed to outside entities").

The Court separately holds that NHTSA has satisfied the foreseeable harm standard for these attorney client withholdings. The legal standard for assessing the foreseeable harm standard in the context of attorney client privilege withholdings is unsettled. The FOIA statute "unmistakably mandates that the foreseeable harm requirement extends to all privileges under FOIA Exemption 5." *Am. First Legal Found. v. U.S. Dep't of Just.*, 805 F. Supp. 3d 187, 214 (D.D.C. 2025). But another court in this district has emphasized that in the context of the attorney-focused privileges, the risk of harm through disclosure is "more self-evident" because of the "prominent and sacrosanct" nature of the attorney client relationship. *Reps. Comm.*, 567 F. Supp. 3d at 120. Accordingly, courts have found that the foreseeable harm criterion "may be deemed satisfied, even without a detailed agency justification, if the context and purpose of the withheld information support such a conclusion." *Am. First Legal Found.*, 805 F. Supp. 3d at 214. The Court finds that, to the extent that NHTSA has properly shown that the covered communications are within the bounds of attorney client privilege, the agency has satisfied its obligation to demonstrate foreseeable harm because release of such communications would "undoubtably undermine our legal culture" and cause agencies to lose their "ability to confidentially consult agency lawyers." *Reps. Comm.*, 567 F. Supp. 3d at 120; *see Pub. Emps. for Env't Resp.*, 211 F. Supp. 3d at 230 ("Without protections for attorney-client communications, agency officials might not share information with their counsel in the first place, and would consequently be deprived of sound legal advice."). While there may be a circumstance in which disclosure of privileged communications would not cause harm to the agency, NHTSA's descriptions in the supplemental *Vaughn* index have demonstrated that disclosure of these communications would inhibit agency clients from seeking legal advice from agency counsel. The agency has described the specific confidential communications at issue within each of its withholdings and tethered the release of

those confidential discussions to the disruption of candid analysis of legal issues in the Guidelines process.

But, for the remainder of NHTSA's attorney client withholdings, "the Court is not persuaded that the agency has met its burden to demonstrate that [they were] transmitted for the purpose of providing legal advice." *Citizens for Resp. and Ethics in Washington v. U.S. Dep't of Just. (CREW)*, 538 F. Supp. 3d 124, 146 (D.D.C. 2021). First, some documents appear to be attorneys transmitting outside information to agency clients.[10] The D.C. Circuit has made clear that "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *In re Sealed Case*, 737 F.2d at 99. For example, in document 103, an agency attorney advises staff of "a letter received by the Department of Transportation," including the attorney's "impressions regarding the content of the letter." ECF 26-3 at 1. Because the letter came from outside of the agency—and is not confidential—the attorney's descriptions of the letter may not be protected by attorney client privilege, depending on what the attorney said about it. *Tax Analysts*, 117 F.3d at 619 (finding that "when the official transmits the relevant facts to the Chief Counsel, no new or confidential information *concerning the Agency* is imparted"). Additionally, to the extent that counsel's "impressions" of outside letters involve legal analysis, the D.C. Circuit has noted that attorney client privilege does not protect "neutral, objective analyses of agency regulations" like "question and answer guidelines which might be found in an agency manual." *Coastal States*, 617 F.2d at 863; *see Ams. for Fair Treatment*, 663 F. Supp. 3d at

---

[10] Documents in this category, as described in the supplemental *Vaughn* index at ECF 26-3, are: 103 ("The entirety of the message consists of the attorney advising the members of NHTSA's program office of a letter received by the Department of Transportation and containing the attorney's impressions regarding the content of the letter and the aspects of it that are relevant to the Agency's ongoing work relating to the Phase 2 Distraction Guidelines."); 1349 (an "attorney's impressions regarding the content of" an external letter, including "the legal issues raised in the letter[] and the aspects of the letter that are potentially relevant to the Agency's work on the Guidelines"); 3798 to 3831 (document provided by counsel to agency staff "for the purpose of advising the latter about the nature of comments received in response to the proposed Phase 2 Guidelines").

58 ("[A]n abstract discussion of [legal] requirements would not necessarily reveal client communications."). If an attorney received an external letter and then described the letter's list of FOIA exemptions, for example, such an analysis could not be withheld under attorney client privilege.

NHTSA has also sought to withhold many communications that appear to be strategic or policy discussions in which lawyers are simply included or copied.[11] As courts have observed, the

---

[11] Documents in this category, once again as described in the supplemental *Vaughn* index at ECF 26-3, are: 942 to 943 ("The email chain discusses a briefing memorandum prepared by NHTSA for OST review to help prepare OST for an upcoming meeting with an external company," cc'ing an attorney); 1059 to 1060 ("The email chain discusses a list of vehicle research reports and seeks advice relating to the potential release" of those reports.); 1167 (email "seeking advice and information regarding potential next steps for Phase 2 Driver Distraction matters, as well as conveying the scope of . . . current activity"); 1191 to 1197 ("The emails reflect discussions about draft agency documents pertaining to comments received on the proposed Phase 2 Guidelines and cost estimates associated with the proposed Phase 2 Guidelines, and reveal certain associated impressions and analysis."); 1219 (email "relaying requests for more information in preparation for a possible upcoming hearing"); 1223 to 1227 (email chain "reflecting a request from counsel regarding the coordination of work items, and impressions of that request"); 1326 (appointment sent to staff including attorney "regarding driver-distraction issue, containing relevant summary"); 1346 to 1348 ("The email includes discussions about issues as they relate to the Phase 2 Guidelines and impressions about comments made regarding those Guidelines. Counsel is included for purposes of remaining apprised of the issues."); 1413 to 1414 ("emails discuss[ing] comments made on the proposed Phase 2 Guidelines and potential responses," cc'ing attorney for potential provision of legal advice if issues arise); 1436 to 1439 (emails "regarding preparation of draft briefing memorandum for DOT leadership in anticipation of a meeting with an external entity," keeping counsel apprised); 1466 to 1467 (emails "regard[ing] comments made on the proposed Phase 2 Guidelines and agency evaluations thereof," including keeping counsel apprised); 1550 to 1551 (emails discussing "potential approaches and responses to an outside request regarding driver-braking reaction time," including lawyer's "impressions of the request"); 1590 to 1593 (email chain regarding upcoming meeting with Blackberry where "[c]ounsel is included on such email to enable them to provide advice in the event issues arise"); 1666 to 1668 (emails including counsel, "among others," and discussing "test procedure documents pertaining to distraction guidelines"); 1673 to 1680 (emails for the purpose of responding to an outside inquiry regarding a mobile-device feature, on which attorney is "included" "for the purpose of remaining apprised," and for which attorney provides "analysis and advice"); 1686 to 1688 (emails about "developing responses to certain challenges raised to the proposed Phase 2 Guidelines," which include counsel); 1689 to 1690 (same); 1821 to 1825 (email chain in preparation for upcoming meeting with DOT Secretary, cc'ing NHTSA Chief Counsel); 1822 (email regarding talking points for meeting with DOT Secretary, discussing "potential policy considerations for NHTSA's approach to" advanced vehicle technology); 1829 (email "providing information for data sheet for review and potential input," on which counsel is included to "stay informed"); 1831 (email "regarding agency reports pertaining to vehicle safety research for review and potential input," on which counsel is "included"); 1834 to 1835 (emails "regarding agency reports pertaining to vehicle safety for review and potential input," on which counsel is "included"); 1842 (same); 1846 to 1847 (email chain "setting up briefing on Phase 2 driver distraction issues," on which counsel is "included"); 1890 (request about "issues relevant to developing a response to an inquiry from FairWarning," on which counsel is "included"); 1896 to 1897 (email "for the purpose of requesting input on vehicle safety research reports," on which counsel is "included"); 1888 to 1899 (email "for the purpose of apprising recipients of agency initiatives for consideration by agency leadership," on which counsel is "included"); 1956 to 1957 (email "attaching a presentation and language for use in an internal briefing" and copying counsel); 3721 to 3723 (email chain cc'ing counsel to apprise him of "potential issues and considerations relevant to the agency's ongoing and potential future work pertaining to the Phase 2 Distraction Guidelines and HUDs"); 3732 (same).

mere fact that a communication involves a lawyer does not establish attorney client privilege. *See CREW*, 538 F. Supp. 3d at 135. For example, the privilege "does not extend to a government attorney's advice on political, strategic, or policy issues, valuable as it may be." *Id.* The government agency bears the burden of establishing that "securing legal advice was a primary purpose of the communication in question." *Id.* In this case, many of the documents that NHTSA seeks to withhold appear to be copying attorneys on general strategy discussions within the agency. *See, e.g.*, ECF 26-3 at 8 (describing record 942–43 as an "email chain discuss[ing] a briefing memorandum prepared by NHTSA . . . for an upcoming meeting with an external company," cc'ing an attorney); *id.* at 13 (Record 1346–48: "The email includes discussions about issues as they relate to the Phase 2 Guidelines and impressions about comments made regarding those Guidelines. Counsel is included for purposes of remaining apprised of the issues."); *id.* at 20 (Record 1846–47: "Counsel is included on the invite to keep them apprised of ongoing issues and enable the provision of advice as issues or concerns may arise, including in the event that legal issues arise that require their advice."). Keeping counsel "apprised" of ongoing strategic developments does not establish that the senders of the emails sought to "secur[e] legal advice" as a "primary purpose of the communication." *CREW*, 538 F. Supp. 3d at 135; *see Hunton & Williams*, 248 F. Supp. 3d at 254 (rejecting the assertion of attorney client privilege over emails where "the context makes it clear that the attorney was only a participant in the email chain as a carbon-copy"). The agency argues that any topics on which attorneys have asked to be copied reflects those attorneys' judgment as to which issues they have asked to "receive updates" on, thus "ensuring that they fully understand the factual predicates necessary to render legal advice as necessary." ECF 20-5 ¶ 47. The agency even goes so far as to argue that emails that attorneys do not respond to can be withheld because the attorney's choice not to respond "demonstrates the[ir]

22

judgment" as to "what information sufficed or merited additional follow-up." *Id.* But such an argument plainly misunderstands and lowers the bar for the attorney client privilege; the agency must show that the attorney was "an active participant" in the communication and not "merely carbon-copied." *Hunton & Williams LLP*, 248 F. Supp. 3d at 253.

Next, some documents appear to describe logistical information about an attorney's role in review processes or coordination, as opposed to providing legal advice.[12] For example, some emails appear to describe the stage of review at which the Office of Chief Counsel examines documents or its timeline for doing so. Absent further description, it is unclear to the Court whether such communications were made by or to the attorney for the purposes of providing legal advice or simply for logistical clarity. Accordingly, the Court rejects for now any assertion of attorney client privilege over documents that appear to describe lawyers' roles in "ministerial task[s]" such as coordination or planning. *Cause of Action Inst.*, 521 F. Supp. 3d at 86. Finally, the description

---

[12] Documents in this category, *see* ECF 26-3, are: 155 ("The email describes NHTSA's internal process for docketing a report and the preceding email in the chain describes the components of the report. The attorney-client communication redaction arises because Ms. Mazzae's email described the NHTSA Office of Chief Counsel's role and review in the process."); 681 to 682 (email regarding status of draft reports under review by attorneys); 384 to 386 (emails "advis[ing] of impending preparation needed for an upcoming congressional hearing in which driver distraction topics may arise" and coordinating "how to prepare the requested work"); 1034 ("discussion regarding the Agency's participation in the event" in an email sent to counsel); 1326 (email regarding driver distraction email, including counsel); 1389 to 1390 (email chain between non-attorneys that discusses "review of, and related input on, certain test procedures documents," including Office of Chief Counsel's role in the process); 1391 to 1392 (email chain "for the purpose of facilitating efforts on research reports, reflecting status of review and role of NHTSA's Chief Counsel Office in that process," including "information provided by an attorney"); 1850 to 1851 (email chain "regarding the status of draft agency reports pending agency approval and final disposition," including Office of Chief Counsel's "actions in review"); 1885 to 1886 (email chain "for the purpose of requesting and developing responses to questions raised from an external inquiry related to the proposed Phase 2 Guidelines," including a portion "prepared by counsel"); 2189 to 2190 (counsel "provides [staff] information and a request about a driver distraction work item" and subsequent emails "reflecting a request from counsel regarding the coordination of work items"); 2191 (email to counsel "seeking input on the status of a work item related to driver distraction"); 2192 (email chain "reflect[ing] a request from counsel regarding the coordination of work items"); 3446 (email chain "discussing questions from NHTSA's Office of Chief Counsel about the status of work items pertaining to driver distraction"); 3450 to 3451 (email chain "discuss[ing] a potential response to an outside inquiry that implicates certain AV policy and legislative issues," including counsel's participation in "efforts to coordinate the response"); 3451 to 3455 (same); 3664 to 3665 (email chain including impressions from counsel "regarding driver distraction activities," including "status of various efforts" and "assistance being sought").

of some documents is so vague as to not permit the Court to ascertain whether a primary purpose

of the communication was the seeking of legal advice or whether it involved confidential

communications at all.[13]

At this time, the Court denies summary judgment to both Parties as to the categories of

documents described above, *supra* 20–24 nn.10–13, and orders NHTSA to either (1) release the

documents to Plaintiff if it no longer believes it can justify withholding the documents in light of

this opinion or (2) provide additional detail in supplemental declarations or *Vaughn* indices to help

the Court assess whether the attorney client privilege applies if it maintains that the documents are

privileged.

### C. Attorney Work Product

Next, the Court briefly evaluates NHTSA's attorney work product withholdings. NHTSA

has only asserted the attorney work product doctrine over documents that it has also withheld under

the attorney client privilege. For those documents which the Court has already granted NHTSA's

motion for summary judgment on the basis of attorney client privilege, it has no reason to consider

NHTSA's attorney work product argument. For the remainder, the Court finds that the attorney

---

[13] Documents in this category, *see* ECF 26-3, are: 295 ("The email is forwarding a draft document that the attorney reviewed and provided input/comments on."); 984 (an email "relay[ing] the attorney's comments to a draft document," without details as to the content of the draft document); 1093 ("The email consists of the attorney's request for information pertaining to new vehicle technology . . . and the redacted portions of the email reflect the attorney's impressions on important topics in the article for the Agency's work on driver distraction."); 1166 ("The redacted portion of the email reflects the content of a meeting that Mr. Monk was requesting from the email's recipients (regarding the status of the Phase 2 Guidelines)."); 1372 to 1373 (email chain "reflecting discussions for the purpose of preparing for briefing agency leadership" including Chief Counsel); 1535 to 1536 (email "requesting input" "on an item pertaining to the Phase 2 Guidelines that [an attorney] is coordinating"); 1893 to 1894 (email chain including counsel on "discussions about issues as they relate to the Phase 2 Guidelines and impressions about comments made regarding those Guidelines"); 1921 (email "for the purpose of requesting responses to certain challenges raised to the proposed Phase 2 Guidelines"); 3178 to 3179 (email chain involving contractors and NHTSA personnel regarding draft test cost estimates, on which counsel was copied); 3280 (email cc'ing attorney "for the purpose of providing documents pertaining to the Phase 2 Guidelines for appraisal and future action"); 3508 to 3511 (email chain "reflecting discussions for the purpose of preparing for briefing agency leadership including NHTSA's Chief Counsel, Jonathan Morrison"); 3570 to 3571 (same).

work product doctrine does not apply and does not shield those documents from disclosure. NHTSA must justify withholding those documents under the attorney client privilege alone.

The work product doctrine holds that "materials prepared by one's attorney in anticipation of litigation are generally privileged from discovery by one's adversary." *NACDL*, 844 F.3d at 250. The doctrine "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States*, 617 F.2d at 864. To invoke work product protection, NHTSA must meet "its burden of establishing that litigation was fairly foreseeable at the time" the documents were prepared. *Id.* at 865. The lawyer preparing the document "must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998).

NHTSA states that it withheld three types of documents under this doctrine: "(1) communications from an attorney that summarize feedback or impressions on a document or outside inquiry; (2) communications from attorneys regarding outside inquiries that provide draft language or recommend a particular . . . response; and (3) documents that contain or describe comments and input from NHTSA attorneys." ECF 20-1 at 26–27 (citing ECF 20-5 ¶ 49). It is telling, however, that nowhere in its description of these documents does NHTSA mention litigation at all, much less whether litigation was "fairly foreseeable." While NHTSA was not required to identify a specific claim or lawsuit on the horizon, it must do more than assert that communications occurred regarding the "identification of potential legal issues." ECF 26-2 ¶ 9. For example, the D.C. Circuit has found that litigation is reasonably foreseeable when there have been "allegations" of evasion of federal campaign finance laws, when lawyers are meeting with "potential grand jury targets to discuss possible charges," or when analyzing whether "business

25

decisions might result in antitrust or securities lawsuits." *In re Sealed Case*, 146 F.3d at 886. In other words, the party asserting the privilege must provide some basis to conclude that the legal work in question was done "in anticipation of litigation" and not "in the ordinary course of business or for other nonlitigation purposes." *Id.* at 887. Here, one of NHTSA's declarants correctly observes that comments presented to agencies on proposed guidance—including "critical comments from sophisticated stakeholders"—can often form the basis of future lawsuits against an agency. ECF 26-2 ¶ 9. The declarant notes, for example, that there is a rise in the "relative likelihood of litigation" and that such suits could be filed by "groups with particular interest in the subject matter of the action." *Id.* But the "mere possibility" of litigation is not "tangible enough to support so broad a claim of privilege." *Coastal States*, 617 F.2d at 865. Additionally, the agency occasionally refers to "challenges raised" to the proposed Phase 2 Guidelines but does not specify if it means "legal" challenges in the form of litigation or only critical comments. *See*, *e.g.*, ECF 26-3 at 22 (record 1921 is an email sent "for the purpose of requesting responses to certain challenges raised to the proposed Phase 2 Guidelines").

Plaintiff, on the other hand, has articulated a concrete reason why litigation was likely *not* foreseeable. Because the Guidelines are nonbinding, voluntary, and impose no legal consequences, the D.C. Circuit has held that they are not final agency action subject to suit under the Administrative Procedure Act (APA). *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 800 (D.C. Cir. 2006). Of course, a party could sue outside of the APA context and the agency could have foreseen litigation through its engagement with industry stakeholders and its analysis of the comments received. But, if so, NHTSA has provided no reason to the Court as to why it thought such litigation was likely. NHTSA was also "required to prepare" many of these documents as part of the notice-and-comment process and would have done so "even if it knew

that no litigation would ever result." *Hunton & Williams LLP*, 248 F. Supp. 3d at 252. Such documents were not created "*because of*" possible litigation simply because some of the commentors may be "contentious" or "litigious." *Id.*

Finally, NHTSA argues that Plaintiff has conceded that litigation was reasonably foreseeable by asking the agency whether industry groups "threaten[ed] litigation if NHTSA issued Phase II guidance." ECF 23-2 ¶ 21(c). But NHTSA cannot rely on that statement—phrased as an open-ended question—to substitute for work it should have done. Plaintiff's statement does nothing to shed light on the subjective beliefs of the agency's attorneys at the time they prepared the documents in question. *In re Sealed Case*, 146 F.3d at 884 (noting that the lawyer preparing the document "must at least have had a subjective belief that litigation was a real possibility"). The Court is not examining whether *Plaintiff* thought litigation was foreseeable, but whether *the agency* thought so. NHTSA has not demonstrated that litigation was likely and instead appears to assert the work product privilege over documents that were produced "in the ordinary course of business." *Id.* at 887. As a result, the Court rejects NHTSA's argument that the attorney work product doctrine could provide an additional basis for justifying certain withholdings.

### D. Segregability

As a last step, when an agency withholds information in a responsive record from disclosure, FOIA requires that any "reasonably segregable" information be disclosed. 5 U.S.C. § 552(b). The agency is "entitled to a presumption that it complied with the obligation to disclose reasonably segregable material." *Rudometkin*, 140 F.4th at 494. To rebut this presumption, Plaintiff must provide the Court with "evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation." *Id.* Because the Court has rejected the entirety of NHTSA's deliberative process withholdings, it declines to address the segregability issue as to

those documents. As to those limited documents that the Court found that the agency properly withheld under attorney client privilege, *see supra* 16–17 nn.8–9, the Court finds that the agency has reasonably segregated nonexempt information.

Plaintiff identifies one "red flag[]" from NHTSA's supplemental *Vaughn* index in a document that the Court granted summary judgment to the agency on, which he alleges demonstrates the agency's failure to "properly segregate[]" factual information.[14] ECF 29 at 20. Plaintiff contests the agency's withholdings in documents 1625–65, which are email chains that include extensive discussions among agency counsel and staff "about the status of draft documents pertaining to driver distraction, including questions seeking advice from counsel, comments/feedback and legal advice from counsel, potential revisions to the documents, and planning for future agency activities." ECF 26-3 at 17. The Court has found that such documents are properly withheld under the attorney client privilege. *Supra* 16 n.8. Plaintiff argues that the "status" of draft documents is factual information and must be disclosed even if the comments, feedback, and document revisions can be withheld. ECF 29 at 20.

The Court is unpersuaded that this alleged "red flag" rebuts the default "presumption that [NHTSA] complied with the obligation to disclose reasonably segregable material." *Sussman v.*

---

[14] Plaintiff also raised documents 248–82 as one of its "red flags" in the agency's segregability analysis. ECF 29 at 20. Because those documents are to be released under this Court's ruling on the deliberative process issue, *supra* Section III.A, the Court does not need to address whether factual information in those documents is segregable. Even if the Court were to consider it, the Court finds that Plaintiff's example does not cast doubt on the agency's rationales for withholding the entire document. These withheld pages are a PowerPoint presentation that Plaintiff alleges contains segregable factual information about "NHTSA policies and observations on driver distraction incidence and mitigations." ECF 29 at 20 (citing ECF 26-3 at 4). NHTSA explained in its supplemental *Vaughn* index that the agency believed that the choice of "possible topics to cover on each slide, how to structure any resulting discussions on the topics, and which issues to emphasize" were covered by the deliberative process privilege. ECF 26-3 at 4. While the agency's description of the document focused on the presenter's personal annotations, the same logic could apply to and justify withholding of the selection of factual content on the slides. *See Ctr. for Biological Diversity v. EPA*, 369 F. Supp. 3d 1, 20 (D.D.C. 2019) ("[W]ell-established law in this Circuit [states] that the deliberative process privilege operates to shield from disclosure agency decision-making reflecting the collection, culling and assessment of factual information.").

*U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). NHTSA, per usual practice, filed a declaration stating that it has conducted a "line-by-line review of the documents" and determined that there is no additional non-exempt information that can be reasonably segregated.[15] ECF 20-5 ¶ 50. As noted on the *Vaughn* index, this lengthy email chain between counsel within NHTSA's Office of the Chief Counsel is only partially redacted. ECF 26-3 at 17. The agency may have reasonably concluded that the "status" of the draft documents could not be disclosed without shedding light on the nature of the documents themselves, which may reveal sensitive discussions involving "questions seeking advice from counsel." *Id.* Because the status of draft documents may be, within the agency's judgment, "inextricably intertwined with exempt portions" of the relevant discussions, the Court finds that NHTSA has fulfilled its obligation to show "with reasonable specificity why a document cannot be further segregated." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002).

\* \* \*

As analyzed above, it is hereby **ORDERED** that Plaintiff's Motion for Summary Judgment and NHTSA's Motion for Summary Judgment are both **GRANTED** in part and **DENIED** in part. ECF 20; ECF 23.

The Court **GRANTS** Plaintiff's Motion and **DENIES** NHTSA's Motion on (1) Categories 1–5 of the agency's withholdings under the deliberative process privilege and (2) on any withholdings under the attorney work product doctrine.

---

[15] The D.C. Circuit has also recently clarified that agencies must segregate and disclose information that falls under a FOIA exemption but "could be disclosed without causing foreseeable harm." *Rudometkin*, 140 F.4th at 494. In this case, the Court has only permitted the agency to withhold documents under the attorney client privilege and, as discussed above, the Court has found that the agency has satisfied its burden in demonstrating foreseeable harm from the potential release of such documents. *See supra* 16–17 nn.8–9. There is nothing in the record before the Court suggesting that NHTSA has withheld any documents under attorney client privilege that could be disclosed without causing foreseeable harm, rendering it unnecessary to require the agency to re-analyze exempt documents in this instance.

The Court **GRANTS** NHTSA's Motion and **DENIES** Plaintiff's Motion on (1) documents protected from disclosure under the attorney client privilege, as listed in footnotes 8 and 9, and (2) on the issue of segregability for those properly withheld documents. The Court also **GRANTS** NHTSA's Motion as to Category 6 of its deliberative process withholdings and for two documents the agency has already produced (NHTSA-ES19-004222-000186 and 1026).

The Court **DENIES** both Parties' Motions as to the remainder of the documents that NHTSA has sought to withhold under the attorney client privilege, as listed in footnotes 10–13. As explained in the memorandum opinion, NHTSA "may either (a) supplement its *Vaughn* Ind[ices] and declarations" to explain how those documents are covered under the privilege or "(b) supply . . . [P]laintiff with the withheld documents." *Hardy v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 243 F. Supp. 3d 155, 179 (D.D.C. 2017).

NHTSA is **ORDERED** to re-process Plaintiff's FOIA request in accordance with this memorandum opinion and order.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: February 25, 2026